UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARISA PAWELKO            :
                          :
v.                        :    C.A. No. 16-00201-JJM
                          :
HASBRO, INC.              :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant Hasbro's Motion for Summary Judgment. (ECF Doc. No. 113). Plaintiff Marisa Pawelko objects to the Motion. (ECF Doc. No. 163). For the following reasons, I recommend that Hasbro's Motion for Summary Judgment be GRANTED in part and DENIED in part as specified herein.

**Background**

In her Third Amended Complaint, Plaintiff claims to be the inventor of an "original, innovative [crafting] product and idea" known as "Liquid Mosaic." (ECF Doc. No. 41 at p. 1). She describes the invention as "a one of a kind arts and crafts play system…that made it easy and fun for children to create art projects and decorate by using a unique craft gun, with interchangeable extrusion tips to draw different line patterns and create textures, and prefilled removable cartridges containing a compound that sticks to multiple surfaces…." (ECF Doc. No. 163 at p. 1). On November 15, 2010, Plaintiff executed Hasbro's standard Non-disclosure

Agreement and thereafter pitched the idea to Hasbro.[1]  Her presentation included participation in a conference call, a five-page slide deck sent by email (ECF Doc. No. 41-2), and three sample craft projects (a hat, a purse and a light switch cover) made with a prototype compound made of caulk. (ECF Doc. No. 163 at pp. 1-2).  Hasbro passed on the idea in December 2010 but told Plaintiff that "Liquid Mosaic" was "a great concept that we'll keep in mind for the future but the disposition now is a pass."  (ECF Doc. No. 41 at ¶ 12).  In May 2011, Hasbro returned the "Liquid Mosaic" samples to Plaintiff.  Id. at ¶ 13.

Plaintiff contends that Hasbro misappropriated her "Liquid Mosaic Submission" and used it to develop Play Doh Plus and DohVinci, two new product lines that incorporate the elements and features of "Liquid Mosaic."  (ECF Doc. Nos. 41 at p. 1 and 163 at p. 2).  Hasbro denies such misappropriation and disputes that the "Liquid Mosaic Submission" qualifies as a legally protectable trade secret.

Plaintiff's Third Amended Complaint contains seven claims against Hasbro based on this alleged conduct:  breach of the Non-disclosure Agreement, breach of the covenant of good faith and fair dealing, breach of an implied-in-fact contract, breach of the Rhode Island Uniform Trade Secrets Act (R.I. Gen. Laws § 6-41-1, et seq.), common law unfair competition, breach of the federal Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.), and unjust enrichment.

Plaintiff concedes that Count V (Unfair Competition) may be dismissed.  (ECF Doc. No. 163 at p. 66).  Plaintiff also "acknowledges" that Rhode Island does not recognize a claim for unjust enrichment (Count VII) when an express contract exists between the parties such as in this

---

[1] Plaintiff communicated with Hasbro at the 2009 Craft and Hobby Association Show, and Hasbro reached out to her in October 2010.  The parties entered into a "Work for Hire" Consulting Agreement on November 4, 2010 that is not at issue in this suit.

case. Id. at p. 67.² As to Count III (Breach of Implied-in-fact Contract), Hasbro persuasively argues that it fails as a matter of law because the parties executed an express contract (the Non-disclosure Agreement) that governs the same subject matter. (See ECF Doc. No. 187 at pp. 62-65). The premise of Count III is that Hasbro used Plaintiff's confidential information without her consent and without remuneration. This is the exact same conduct underlying Plaintiff's claim in Count I that Hasbro breached the Non-disclosure Agreement. (See, e.g., ECF Doc. No. 41 at ¶¶ 41, 42). Thus, Count III should be dismissed. Finally, as to Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), Hasbro again persuasively argues that dismissal is warranted because the allegations in Count II are redundant of Plaintiff's Count I breach of contract claim. (ECF Doc. Nos. 113 at pp. 58-59 and 187 at pp. 63-65). Plaintiff effectively concedes this in her brief. (See ECF Doc. No. 163 at p. 60).³ There is no substantive difference between the alleged misconduct underlying Counts I and II. Both are necessarily premised on the use of Plaintiff's confidential information without her consent and without remuneration. Thus, Count II is duplicative and subsumed within Count I as a matter of law and must be dismissed. See Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000).

After separating the wheat from the chaff, only Count I (Breach of the Non-disclosure Agreement) and Counts IV and VI (State and Federal Trade Secret Misappropriation) should remain standing. Hasbro's Motion does not raise the issue of whether or not Plaintiff has presented

---

² Plaintiff cites Mehan v. Gershkoff, 230 A.2d 867, 869-870 (R.I. 1967), as the support for her acknowledgment. See also High Rock Westminster St. LLC v. Bank of Am., N.A., C.A. No. 13-500-WES, 2014 WL 3867699 at *2 (D.R.I. Aug. 6, 2014) (holding that unjust enrichment claims are precluded where a valid contract governs the subject matter). Plaintiff's reliance on a 2004 Law Review article and a distinguishable 2002 Superior Court decision to save Count VII is unconvincing and rejected.

³ See Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 907 F. Supp. 2d 216, 245 (D.R.I. 2012) (dismissing a good faith and fair dealing claim because it "is limited to asserting that [the defendant] acted in a manner that is not consistent with the purposes of the Contract" and thus "is redundant and duplicate of [the plaintiff's] breach of contract claim.").

a trialworthy claim of misappropriation. Rather, Hasbro narrowly focuses on the legal status of the information allegedly misappropriated and argues that the "Liquid Mosaic Submission" does not qualify as a trade secret subject to the protections of either state or federal law. In addition, Hasbro argues that it had no contractual confidentiality obligations under Sections 6.1(A), (B) and (E) of the Non-disclosure Agreement because the information in issue was demonstrably known to Hasbro prior to the submission from Plaintiff, was known or generally available to the public prior to the submission from Plaintiff and was disclosed by Plaintiff to a third party without confidentiality required. These arguments are considered below in the context of the applicable Rule 56 standard of review.

**Discussion**

**A.     Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581

(1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### B. Trade Secret Status

Hasbro argues for summary judgment on Counts IV and VI because Plaintiff's "Liquid Mosaic Submission" does not constitute a legally-protectable trade secret under either state or federal law. Relatedly, it argues for summary judgment on Count I because Plaintiff's submission was not contractually entitled to confidentiality protection under the Non-disclosure Agreement. Plaintiff counters that summary judgment is improper because a reasonable jury could conclude that the "Liquid Mosaic Submission" was a trade secret, was misappropriated by Hasbro and was exploited by it for commercial gain. It is undisputed that, to constitute a trade secret, the "Liquid Mosaic Submission" must (1) not be generally known to others who could obtain economic value from its use; (2) not be readily ascertainable to others who could obtain economic value from its use; (3)

derive independent economic value from remaining secret; and (4) be subject to reasonable efforts to maintain its secrecy. (ECF Doc. Nos. 113 at pp. 23-25 and 163 at pp. 23-24).

The first task for the Court is to define the applicable lens through which the parties' respective submissions must be viewed.[4] Hasbro understandably prefers a narrower lens that focuses on the trade secret status of the "Liquid Mosaic Submission" and excludes evidence regarding Plaintiff's claims of misappropriation and commercial exploitation. In its Reply Memorandum, Hasbro faults Plaintiff's attempt to tell a "tale of misappropriation" in her opposition brief which serves only to "distract" from the trade secret issue. (ECF Doc. No. 187 at pp. 4-5). Plaintiff, on the other hand, suggests a broader lens which captures more of the evidence regarding Hasbro's alleged misappropriation and later product development activities. Plaintiff posits that such evidence supports a reasonable inference that her product idea was novel and valuable and thus entitled to trade-secret protection. In view of the Rule 56 requirements that the evidence be liberally construed in the light most favorable to Plaintiff and that all reasonable inferences be drawn in her favor, the Court leans towards a broader lens. See Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1318 (11th Cir. 2015) ("If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."); see also Anderson, 477 U.S. at 255 (the drawing of legitimate inferences from the facts are jury functions, not those of a judge ruling on a motion for summary judgment).

The second task is to ascertain what constitutes the "Liquid Mosaic Submission" for which Plaintiff claims trade-secret status. Plaintiff defines the concept as a "compilation of elements" including ideas, tools and means of execution for a variety of craft projects as follows:

- A dimensional adhesive compound that sticks to multiple surfaces such as "fabric, plastic, metal, glass, ceramic, wood, paper and more!!!";

---

[4] The parties have collectively submitted over 200 pages of substantive briefing and nearly 3,500 pages of Local Rule CV 56 Fact Statements and Supporting Exhibits for the Court's review and consideration.

- A craft gun style applicator that extrudes dimensional adhesive compound;

- The craft gun style applicator is easy to use – "just squirt n' stick" – as the compound is contained in a prefilled interchangeable cartridge; it also provides a variety of options as it comes with refills, which contain different vibrant colored compounds, even glow in the dark compound, glittery compound and dual swirl filling that combines two different colors;

- Interchangeable extruder tips, that screw onto the cartridges, and come in a variety of shapes for creating different textures, such as frosting, and for drawing different line patterns, such as swirly lines;

- The modeling compound is a dimensional adhesive type material that comes in different colors and effects, and can hold fine details like swirly lines;

- It has many different types of use: art projects, DIY crafts, embellishing (with beads, charms, buttons, pins, rhinestones); wearable art, and room décor.

(ECF Doc. Nos. 163 at p. 7, and 165 at ¶¶ 253-258). This collective concept was allegedly communicated to Hasbro during the November 2010 conference call and through the slide deck and samples. Hasbro takes issue with Plaintiff's description and accurately observes that her submission did not actually include any compound or material, a craft gun-style applicator, any pre-filled cartridges or refills or any interchangeable extruder tips. (ECF. Doc. No. 188 at pp. 1-4). Hasbro accurately points out that Plaintiff had not invested the resources to engineer and develop prototypes of the physical components of her submission or a marketable compound for the crafting material. She submitted a concept consisting of a combination of elements, and the issue is whether that concept is a legally-protectable trade secret. Hasbro also argues that Plaintiff's submission could not have any independent economic value as a child's crafting product because her samples were made with ordinary bathroom caulk which is toxic and not suitable for the children's market. (ECF Doc. No. 113 at pp. 47-50).

Taking those points in reverse order, the toxic caulk argument is a red herring. There is no evidence that Plaintiff was pitching a children's crafting idea that would ultimately be based on

toxic caulk. "Independent economic value…does not require that the designs be completely refined, developed, and manufactured." Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc., 680 F. Supp. 2d 830, 844 (E.D. Mich. 2010) (citing Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 726-727 (7th Cir. 2003)). In fact, Andrew Jeas, a Hasbro Product Acquisition Manager, who met with Plaintiff about her submission, testified that Hasbro looks at inventions at various stages and explained: "…in situations where an inventor presents something that requires development work before it's brought to market – it could be engineering, it could be a chemical formulation – you know, the assumption is that Hasbro will take a look at making whatever is presented suitable for commercial distribution. So nothing that we see is ready to go, safe, whether it's a compound or a model or anything." (ECF Doc. No. 166-41 at p. 7). There is also evidence that there were discussions both between Plaintiff and Hasbro, and internally at Hasbro, about the possibility of developing a "kid friendly formula." It is undisputed that Plaintiff sent a follow-up email to Hasbro on December 6, 2010 asking if there had been "any luck figuring out a more kid friendly formulation" and Mr. Jeas of Hasbro responded on December 17, 2010 that he "spoke briefly with our head chemist, and after I told him about your concept,[5] he seemed confident that there would be a way to make a formulation for the product that would meet global regulatory requirements." (ECF Doc. No. 165 at ¶ 275) (emphasis added).

Hasbro's primary argument is that the "Liquid Mosaic Submission" is not a protectable trade secret because its elements were generally known to the public and Hasbro prior to November 2010, and the compilation of such elements was readily ascertainable.[6] While a "trade secret" is

---

[5] Hasbro's head chemist, Linwood Doane, was also subsequently involved in developing the accused products, Play Doh Plus and DohVinci.

[6] Plaintiff argues that Hasbro's position that "Liquid Mosaic" was readily ascertainable is contradicted by its efforts to patent the craft gun and adhesive modeling compound used in the accused products that she contends mirror her "Liquid Mosaic" concept.

defined by statute (R.I. Gen. Laws § 6-41-1(4)), the components of the definition are necessarily fact driven. See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1129 (10th Cir. 2003) ("Trade-secret status is a question of fact."). Further, "a trade secret can be based in elements each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Iconics, Inc. v. Massaro, 266 F. Supp. 3d 449, 457 (D. Mass. 2017) (citations omitted).

The parties have submitted a mountain of evidence in connection with their respective positions. Despite this mountain, Hasbro's Motion presents a straight-forward issue, i.e., "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [Hasbro] must prevail as a matter of law." Anderson, 477 U.S. at 251-252. In considering this issue, the Court must view the evidence and all factual inferences arising from it in the light most favorable to Plaintiff. After doing so, it is apparent that the facts provide Hasbro with several strong arguments but not ones that entitle it to prevail as a matter of law under Rule 56. A few examples are illustrative.

Hasbro argues that Liquid Mosaic is not a trade secret because known crafting techniques, such as DecoDen and Puffy Paint, already incorporated all of its elements prior to Plaintiff presenting the idea to Hasbro in November 2010. (ECF Doc. No. 113 at pp. 32-37). Hasbro's expert, James Scatena, identified DecoDen and Tulip Paint as examples that combined all of the Liquid Mosaic elements. (ECF Doc. No. 166-2 at p. 9). However, Mr. Scatena was unable to identify any example of DecoDen in his report that did so. Id. at p. 13. Also, when asked if he knew of a product that had all of the Liquid Mosaic elements prior to November 2010, he responded: "I know that all the elements existed. There was no product." Id. at p. 15. At a minimum, the totality of the evidence presented on this issue presents a factual dispute as to

whether a product or technique existed in the public domain prior to November 2010 which incorporated all of the Liquid Mosaic elements.

Hasbro further argues that Plaintiff's claims fail because long before Plaintiff presented the "Liquid Mosaic Submission" to Hasbro, it was aware of and had been developing products with the same elements, ideas and concepts. (ECF Doc. No. 113 at p. 38). Plaintiff challenges this assertion on several grounds. First, Plaintiff describes Hasbro's rejection of the "Liquid Mosaic Submission" as a "soft pass." She points to an internal Hasbro email dated December 17, 2010 which references "liquid mosaic" and indicates "[w]e will likely be considering it down the road but no immediate application." (ECF Doc. No. 166-43 at p. 2) (emphasis added). An internal reply email indicated it was a "soft pass" – "they liked the concept but it didn't fit with their short term [creative play] strategy." Id. If Hasbro had already been developing this concept in-house, a reasonable juror may question why these internal emails did not identify that as a reason for the "pass" even if they chose not to share that internal product development information with Plaintiff.[7] Further, Hasbro's Inventor Review Record dated November 22, 2010 reflects a disposition code of 1 "Hold/Send in" rather than 4 "Already in house" for Liquid Mosaic. (ECF Doc. No. 166-45 at p. 2).

As discussed earlier, Rule 56 requires the Court to look at these issues through a broader lens and to consider the legitimate inferences a reasonable juror might draw from the totality of the evidence and not just that focused on by the movant. There is ample circumstantial evidence upon which a finding of misappropriation might reasonably be based, and a finding of

---

[7] Hasbro disputes Plaintiff's assertion that it had no concept or product similar to Liquid Mosaic in-house at the time of her submission. It asserts that prior to November 2010, it "explored new product possibilities for its Play-Doh Product line" which included each of the elements of Plaintiff's submission and that it "developed and sold products that incorporated some of these ideas." (ECF Doc. No. 188 at p. 11). Notably, Hasbro does not specifically identify a single product in existence or under development prior to November 2010 that included all of the elements of Plaintiff's submission.

misappropriation could reasonably support an inference that the misappropriated idea was novel and valuable. For instance, although the details are disputed, it is undisputed that the three developers of the Hasbro accused products had at least some level of prior exposure to Plaintiff's submission.[8] Again, although the details are disputed, there is also evidence of substantial similarities between Plaintiff's "Liquid Mosaic Submission" and Play Doh Plus / DohVinci. In fact, one of the Hasbro inventors of the accused products, Tom Mangiarotti,[9] acknowledged these "connections" and "parallels" during his deposition. (See ECF Doc. No. 166-42). Plaintiff also argues that her position is buttressed by the fact that, during a July 2012 "namestorming" exercise, the term "mosaic" was incorporated into several potential names for DohVinci even though DohVinci (and Liquid Mosaic) is not technically used to make mosaics. These potential names included: Mosaic Clay, Zen Mosaic, Spark Mosaic, Dohsaic,[10] Mesh Mosaic, Mosaic Master and Mosaic Mash. (ECF Doc. No. 166-57). A reasonable juror may infer that the incorporation of mosaic into these name ideas supports a finding that Hasbro improperly used or considered the "Liquid Mosaic Submission" in developing DohVinci.

Hasbro also contends that the "Liquid Mosaic Submission" is not a trade secret because Plaintiff "disclosed [its] essential elements…to the public before she presented it to Hasbro." (ECF Doc. No. 113 at p. 50). It alleges that the disclosures were made by Plaintiff through craft

---

[8] There is evidence that Hasbro generally limits exposure of inventor submissions to a small group to avoid having internal designers being influenced, either consciously or subconsciously, by the content of outside submissions. (See ECF Doc. No. 166-42 at pp. 43-44). Plaintiff contends that this practice was violated with respect to her submission.

[9] Although Mr. Mangiarotti testified that he had no recollection of attending the First Idea Review Meeting at which Plaintiff's submission was considered, he is copied on the agenda and identified as a "required attendee" who "accepted" the meeting invitation. (ECF Doc. No. 166-46).

[10] Tom Hamilton, one of the inventors of the accused products, testified that he might have come up with the name "Dohsaic." (ECF Doc. No. 166-58 at p. 7). Mr. Jeas testified that, shortly after Plaintiff's submission, he discussed the Liquid Mosaic "idea with Tom Hamilton, but didn't share any materials." (ECF Doc. No. 166-41 at p. 10). He indicates that he "had that conversation just to get a gut feel to see if he had interest" and that Mr. Hamilton told him this "was a formulation that they were working on." Id. at p. 11.

show submissions, blogposts, YouTube videos and online interviews. Id. at p. 52. The disclosure issue is a fact-based inquiry, and Hasbro has not shown that the issue is so one-sided that it could only be resolved in its favor.

It is unclear from the voluminous submissions what Hasbro is defining as the "essential elements" and when those particular elements were publicly disclosed. Hasbro seems to argue that some elements were disclosed, and that other elements which were not disclosed, could be "logically implied" or "readily ascertained" from what was disclosed. Plaintiff counters that not all of the elements of her claimed trade secret were disclosed and any individual elements disclosed did not contain sufficient technical detail or the totality of the specific combination of features comprising "Liquid Mosaic" to constitute public disclosure. While Hasbro makes some strong points, those points must be made to the trier of fact and are not sufficiently strong to meet its Rule 56 burden.

In summary, this is a factually complex case, and Hasbro has moved for summary judgment on fact-intensive issues. After thoroughly reviewing the parties' respective arguments and submissions, I conclude that it would be impossible to rule in Hasbro's favor on this Rule 56 Motion without impermissibly viewing facts or drawing inferences in a manner more favorable to Hasbro than Plaintiff. In addition, I conclude that the trade secret challenge made by Hasbro in this Rule 56 Motion cannot be considered through the narrow lens suggested by Hasbro but must be viewed in the context of Plaintiff's proffered evidence, both direct and circumstantial, in support of her claims of misappropriation and commercial exploitation. Although Hasbro makes several strong arguments about the limited nature of Plaintiff's "concept" submission, the presence of similar techniques in the public domain, and its own independent product development activities,

those arguments are not strong enough to support the grant of summary judgment and must be presented to the finder of fact at trial.

### C. DTSA Effective Date (Count VI)

Hasbro makes an alternative argument for summary judgment as to Count VI. In Count VI, Plaintiff claims that Hasbro's actions violated the Federal Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 et. seq. ("DTSA"). The DTSA applies to "any misappropriation of a trade secret…for which any act occurs on or after the date of the enactment of [the] Act." "Misappropriation" under the DTSA includes both acquisition and disclosure or use of trade secrets. 18 U.S.C. § 1839(5)(A)&(B). The DTSA was enacted on May 11, 2016. Plaintiff does not dispute that the alleged acquisition and disclosure of her purported trade secrets initially occurred prior to the enactment of the DTSA. Plaintiff asserts, however, that Hasbro has continued to violate the DTSA after May 11, 2016 through "use by improper means of [Plaintiff's] original and novel product and related ideas without [Plaintiff's] consent." (ECF Doc. No. 41 at p. 21). Plaintiff's "continuing use" theory rests upon the claim that the sales of Play Doh Plus and DohVinci occurring after May 2016 constitute "misappropriation" of her trade secrets. (ECF Doc. No. 163 at p. 52). She alleges that the "design, packaging and marketing of Hasbro's DohVinci is substantially derived from the trade secrets in and of the Liquid Mosaic Submission." (ECF Doc. No. 41 at p. 21).

The "continuing use" theory presented by Plaintiff is contemplated by the plain language of the DTSA and has been discussed in recent case law. After reviewing these cases, the facts pled and arguments advanced by the parties, Hasbro is entitled to entry of summary judgment on this claim for the reasons discussed below.

Hasbro argues that there is no claim under the DTSA because "any trade secret she may have had would have been extinguished by public disclosures (through the filing of patents on and sales of Play-Doh Plus and DohVinci), which occurred before the enactment of the DTSA.…" (ECF Doc. No. 187 at p. 53). Hasbro asserts that this "pre-enactment public disclosure" forecloses any recovery under the DTSA because once a "trade secret" is publicly disclosed, "it loses any element of secrecy, and subsequent re-disclosures of the same information cannot constitute another use of a trade secret." (ECF Doc. No. 113-1 at p. 54). Hasbro notes that the first sales of Play Doh Plus occurred in 2012, and the first sales of DohVinci occurred in 2014. Id. at p. 55.

In Attia v. Google, LLC, No. 17-cv-06037, 2018 WL 2971049, *12 (N.D. Cal. June 13, 2018), the Northern District of California concluded that a DTSA claim based upon a "continuing use" theory could not stand where the Plaintiff alleged the continuing use of "trade secrets" that were published before the effective date of the DTSA. The Court noted that "in order to avail themselves of the case law permitting DTSA claims to proceed on a 'continuing use' theory, Plaintiffs must plead facts to show misappropriation of *trade secrets* that occurred on or after the DTSA's effective date. That means that any alleged trade secret misappropriation or injury occurring after May 2016 cannot be based on continued use of information that was disclosed in patent applications published in 2012." (emphasis in original). See also Avago Tech. U.S. Inc. v. Nanoprecision Products, Inc., No. 16-cv-03737, 2017 WL 412524, *9 (N.D. Cal. Jan. 31, 2017) ("Simply alleging that the same information was disclosed 'again' is not sufficient to avoid this result as 'disclosure,' by definition, implies that the information was previously secret."). In the present case, Plaintiff's "continuing use" theory falls short applying these reasonable interpretations of the DTSA effective date provision. The facts alleged here are based on the current "use" of alleged "trade secrets" that were disclosed via patent applications and product

sales prior to enactment of the DTSA. Because Plaintiff is claiming the very same "trade secrets" that were used and disclosed pre-DTSA enactment have been used and disclosed post-DTSA enactment, Count VI fails as a matter of law, and I recommend that summary judgment enter in favor of Hasbro.

**Conclusion**

For the foregoing reasons, I recommend that Hasbro's Motion for Summary Judgment (ECF Doc. No. 113) be GRANTED as to Counts II, III, V, VI and VII and DENIED as to Counts I and IV.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 19, 2018