UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MARISA PAWELKO, d/b/a | ) | |
| THE MODERN SURREALIST | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-201-JJM-LDA |
| | ) | |
| HASBRO, INC. | ) | |
|     Defendant. | ) | |
| | ) | |

## ORDER

This business dispute is now in the pretrial motion phase—each party seeking

the Court's guidance in their ramp up to trial. As a reminder of the facts underlying

this dispute, the Court reprints the factual recitation from Magistrate Judge Lincoln

D. Almond's Report & Recommendation:

> Plaintiff claims to be the inventor of an "original, innovative [crafting]
> product and idea" known as "Liquid Mosaic." She describes the
> invention as "a one of a kind arts and crafts play system...that made it
> easy and fun for children to create art projects and decorate by using a
> unique craft gun, with interchangeable extrusion tips to draw different
> line patterns and create textures, and prefilled removable cartridges
> containing a compound that sticks to multiple surfaces...." On
> November 15, 2010, Plaintiff executed Hasbro's standard Non-
> disclosure Agreement and thereafter pitched the idea to Hasbro. Her
> presentation included participation in a conference call, a five-page slide
> deck sent by email, and three sample craft projects (a hat, a purse and
> a light switch cover) made with a prototype compound made of caulk.
> Hasbro passed on the idea in December 2010 *** Plaintiff contends that
> Hasbro misappropriated her "Liquid Mosaic Submission" and used it to
> develop Play Doh Plus and DohVinci, two new product lines that
> incorporate the elements and features of "Liquid Mosaic." Hasbro
> denies such misappropriation and disputes that the "Liquid Mosaic
> Submission" qualifies as a legally protectable trade secret."

ECF No. 219 at 1-2 (citations omitted).

Before the Court are seventeen pretrial motions in Ms. Pawelko's trade secret misappropriation and breach of contract case; Hasbro filed fourteen motions;[1] Ms. Pawelko filed three motions. Each of these motions raises many issues--some at the forefront of this litigation in need of pretrial determination and many side issues the specter of which hovers in the abyss of potential trial issues. The Court does its best to decide definitively those issues that are cued up and reserves its decision on issues that may become moot before trial or that are more suitably decided closer to or at trial. To the extent this Order does not address all the parties' "what if" arguments, it will do so when and if they come to fruition.

## I.      Hasbro's Motions Seeking to Strike or Exclude Damages Opinions

Hasbro has filed three motions that relate to the opinions and testimony from Ms. Pawelko's two damages experts--Suzanne Mills-Winkler and Pauline Booth. ECF Nos. 123, 124, 125. Because these three motions contain overlapping arguments, the Court will address them globally.

### A. The Experts

Ms. Mills-Winkler essentially gives two categories of opinions: the Liquid Mosaic compound Ms. Pawelko pitched to Hasbro is a trade secret and that the royalty damages Hasbro owes Ms. Pawelko should be based on a royalty rate of between 1½ and 5%. She does not offer opinions that a public submission is entitled to royalties; instead she testifies that an invention qualifies as a trade secret even if

---

[1] Four of Hasbro's motions are duplicative of each other because it filed redacted and non-redacted versions of the same motion. ECF Nos. 249 and 259; ECF Nos. 251 and 260; ECF Nos. 255 and 262; and ECF Nos. 256 and 261.

it contains a compound available in the public domain, if that compound in a new form gives the ultimate product a competitive advantage. Ms. Mills-Winkler also gives opinions on industry standards of confidentiality, Hasbro's breach, and how that breach informed the facts on misappropriation.

Ms. Booth opines on the royalty base, which she says consists of the total net sales of all products in the DohVinci sub-brand and the total net sales of all products sold with the PlayDoh Plus compound. She defines net sales as the gross amounts that Hasbro earned for the sale of each product less returns and discounts. Ms. Booth's opines that Ms. Pawelko's damages are about $255 million. Her opinion includes all profits from at least twenty-five products sold with PlayDoh Plus and all products sold under the DohVinci sub-brand earned or to be earned from 2014 through 2023. Those products contained other Hasbro-invented components such as regular PlayDoh, cutlery, and extruders. Hasbro's expert's opinion is that her damages are $261,000 at most. One explanation for this huge disparity is that Ms. Booth's opinion does not restrict--or apportion--the damages to the allegedly infringing component only and Hasbro's expert's opinion does.

### 1. Royalty Damages

Hasbro moves under Federal Rules of Evidence Rules 401, 403, and 702 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude some of Ms. Mills-Winkler's opinions about what reasonable royalty damages to which Ms. Pawelko may be entitled if the jury determines that Hasbro misappropriated her trade secret. Hasbro's main argument is that Ms. Mills-

3

Winkler's opinions are not based on an acceptable methodology and are speculative because she did not adhere to the fifteen factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971)[2] to determine the reasonable royalty rate percentage. ECF Nos. 123, 124. Hasbro also argues that Ms. Mills-Winkler reduced her royalty rate opinion at her deposition from 5% to 3% without explanation. ECF No. 124. Ms. Pawelko counters that Ms. Mills-Winkler's opinions meet the threshold set forth in the rules and *Daubert* because she relies on her extensive work experience in the toy industry in opining on the generally accepted and standard royalty rates. Hasbro's arguments against Ms. Mills-Winkler, she argues, go to the credibility of her opinions that Hasbro can test on cross-examination, not to their admissibility.

Rule 702 states that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" an expert "may testify in the form of an opinion or otherwise." Fed. R. Evid. R. 702. This Court must determine whether 1) the testimony embodies specialized knowledge and 2) that specialized knowledge is relevant so that it will help the jury make its factual determinations. *Daubert*, 509 U.S. at 592-3. As to the first inquiry, the United States

---

[2] The *Georgia-Pacific* factors–an inexhaustive list–"are meant to provide a reasoned economic framework for a 'hypothetical negotiation, ... [which] attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d at 1301, 1324 (Fed. Cir. 2009)).

Supreme Court in *Daubert* noted that "[m]any factors will bear on the inquiry" such as whether the scientific theory can be tested, whether it has been subject to peer review, and whether it is generally accepted within the applicable community. *Id.* at 593-594.

Ms. Mills-Winkler stated that the general industry standard royalty rate in the toy industry is 5%, discounted to 3% for co-branded products. She opined at first in her report that PlayDoh Plus earned a 5% royalty rate, but after learning that PlayDoh Plus was a co-branded product, changed her opinion at her deposition to 3%. There is no dispute that the percentages Ms. Mills-Winkler used in her opinion were the industry standards generally accepted within the toy industry. Hasbro's witnesses confirmed that the industry standard for royalties was 5%. For this reason, the Court finds that Ms. Mills-Winkler's opinions pass muster under Rule 702.

And the fact that she did not expound on every *Georgia-Pacific* factor in her report does not doom her opinion's admissibility. The court in *Georgia-Pacific* set forth fifteen factors relevant to determining a reasonable royalty because it was "necessary to resort to a broad spectrum of other evidentiary facts probative of a 'reasonable' royalty" when there was no "established" royalty. 318 F. Supp. at 1121. Because there is an established toy industry standard royalty rate, the Court finds that the fact that Ms. Mills-Winkler did not focus specifically on the *Georgia-Pacific* factors to render her opinions does not make those opinions inadmissible. If Hasbro believes her opinions are on shaky ground, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Hasbro's motions on this point are DENIED. ECF Nos. 123, 124.

### 2. Industry Standards of Confidentiality

Consistent with its previous Order, the Court finds that Ms. Mills-Winkler's opinions based on industry standards of confidentiality are not relevant to this case in which the parties' Non-disclosure Agreement controls. *See* ECF No. 242. In its reply, Hasbro moves to strike certain numbered paragraphs from Ms. Mills-Winkler's report that relate to the Court's ruling and the Court therefore GRANTS Hasbro's motion to strike as they relate to the industry standards of confidentiality. ECF No. 123.

### 3. Apportionment

Hasbro objects to both experts' failure to reduce their damages opinions to account for Hasbro's contributions to the financial success of the DohVinci and PlayDoh Plus product lines. Without this apportionment, it argues that Ms. Mills-Winkler's and Ms. Booth's[3] opinions are unreliable and should be excluded. ECF Nos. 124, 125.

Ms. Pawelko's theory of the case is that DohVinci and PlayDoh Plus derived from her Liquid Mosaic Submission, PlayDoh Plus was the driving reason that

---

[3] Hasbro argues for exclusion of Ms. Booth's opinion on the royalty base (ECF No. 124) and on disgorgement of profits. ECF No. 125. Both motions are rooted in its argument that Ms. Booth's calculations overstate Ms. Pawelko's damages because she failed to apportion damages to account for the non-infringing components to the PlayDoh Plus and DohVinci lines.

6

consumers bought the PlayDoh Plus sets, and Hasbro decided to add on components like regular PlayDoh, cutlery, and extruders to charge more money because the PlayDoh Plus compound was so unique. Therefore, she argues, the "entire market value rule" exception to apportionment applies because her invention is what motivated consumers to buy the products Hasbro created using the misappropriated Liquid Mosaic Submission. "The 'entire market rule' typically allows the recovery of damages based on the entire value of an apparatus with several features, even though only one feature is patented." *Trustees of Columbia Univ. v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 119 (D. Mass. 2002) (citing *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984)). "For the entire market value rule to apply, the patentee must prove that 'the patent-related feature is the basis for the customer demand.'" *Lucent Techs.*, 580 F.3d at 1336 (citation omitted).

Reviewing the cases the parties cite and others, it is clear to the Court that apportionment in trade misappropriation cases is a potentially important tool that the parties can give the jury if the jury finds liability and determines that the plaintiff suffered damages.

> When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. Indeed, apportionment is required even for non-royalty forms of damages: a jury must ultimately "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" using "reliable and tangible" evidence. Logically, an economist could do this in various ways—by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's nonpatented features; or by a combination thereof. The essential requirement is that the ultimate reasonable royalty award must be

based on the incremental value that the patented invention adds to the end product.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citation omitted).

But, as the court in *Ericsson* highlighted, this is a determination that a jury must make after hearing all the documentary and testimonial evidence. The jury will also presumably hear evidence on Ms. Pawelko's theory of the entire market value exception and determine whether the Liquid Mosaic Submission trade secret "is the basis for the customer demand." *Lucent Techs.*, 580 F.3d at 1336. At this point in the case, pretrial, the Court cannot find that the fact that Ms. Pawelko's experts did not apportion damages is fatal to the admissibility of their opinions. Ms. Pawelko's experts may testify about how they selected the royalty rate and royalty base as justification for their damages opinions and Hasbro can cross-examine them based on its defense theory. When the parties' damages numbers are inconsistent, they must equip the jury with reliable and tangible evidence to decide which numbers are more consistent with that evidence and which experts are more credible. Hasbro's motion is DENIED. ECF Nos. 124, 125.

II.    Hasbro's Motion for a Phased Trial

Hasbro seeks a two-phase trial—first, the jury would decide whether Hasbro was liable and if it so found, then the jury would decide damages. ECF No. 126. Hasbro argues that separating liability from damages will streamline the complicated issues. Hasbro also believes that evidence of its profits and Ms. Pawelko's damages are not relevant to liability because she cannot use its profits as evidence of the Liquid

8

Mosaic Submission's independent economic value. Ms. Pawelko counters that Hasbro's profits are relevant in proving her claim and argues that her case would be prejudiced if she could not introduce evidence of sales and profits.

Despite reams of briefing, the Court does not believe that the trial of this matter involves inherently complex concepts that merit bifurcation. The Court sees no need to separate liability from damages. It is more likely that a phased trial would lead to duplicative expert testimony and evidence, resulting in jurors' time being misused. The Court **DENIES** Hasbro's motion. ECF No. 126.

### III. Hasbro's Motion for an Order that the Remedy of Disgorgement be Decided by the Court, not the Jury

Both parties agree that there is no right to a jury trial on disgorgement in a misappropriation of trade secrets case, so the motion is **DENIED AS MOOT.** ECF No. 127. Ms. Pawelko advocates that the chosen jurors sit in an advisory capacity during the disgorgement evidence and the Court can either take or leave their finding on disgorgement of profits. Ms. Pawelko has presented no persuasive arguments in favor of an advisory jury and "whether or not the advice of a jury would be helpful is a matter lying entirely in the discretion of the trial court." *Delman v. Fed. Prod. Corp.*, 251 F.2d 123, 126 n. 2 (1st Cir. 1958). Her motion is **DENIED.** ECF No. 127.

### IV. Ms. Pawelko's Motion in Limine to Confirm Public Trial and Unseal Judicial Records

It appears to the Court that many, if not all, exhibits were filed under seal either by agreement or without objection. Ms. Pawelko also asserts that there are documents designated "For Attorney Eyes Only" that she has not personally seen.

Ms. Pawelko moves for a public trial because she believes that Hasbro will refuse to display publicly some exhibits. ECF No. 245. Hasbro does not object to a "public trial" but argues that she did not object to sealing any document and does not ask that any specific document be unsealed in her motion.

Ms. Pawelko's motion is DENIED IN PART, GRANTED IN PART. The motion is GRANTED in that this trial and the courtroom at all times will be open to the public. The motion is DENIED in that the Court will not wholesale order that every document here be unsealed without allowing the parties to assess either categories of or individual documents. Before trial, the parties are ordered to meet and confer about the sealed documents appearing on their respective exhibit lists. The parties should alert the Court by letter if there are objections–i.e., whether there are grounds to keep some documents under seal, with the presumption is that the public should have access to exhibits enter into evidence at a trial. The Court will make an independent determination of each document and whether it ought to be sealed– again the presumption in favor of not sealing.

## V. Hasbro's Motion in Limine to Exclude Diagrams Attached to Ms. Pawelko's Third Amended Complaint

Ms. Pawelko created a diagram using pages from Hasbro's website, adding headers and descriptions to the images, to show that Hasbro misappropriated her idea. Hasbro moves to exclude these diagrams under Rules 801(c) and 403 of the Federal Rules of Evidence, arguing that her additions to Hasbro's content are hearsay and even if not hearsay, they are confusing and misleading because it could appear that Hasbro added this information. Hasbro does not object, however, to admitting

the whole, unaltered website. Ms. Pawelko responds that she intends to testify that she added the captions and that it is not hearsay because she is not offering the diagrams for the truth, but as evidence of her investigation of the genesis of DohVinci and its connection with her Liquid Mosaic invention.

Hasbro's motion is **GRANTED** as to the Exhibit C attachment (the diagrams). ECF No. 252. The Court agrees that admitting the altered website images as exhibits could mislead the jury. Ms. Pawelko could use the diagrams with headers and descriptions as demonstratives during her testimony to help the jury better understand her testimony and to learn about her investigation into the similarities between Hasbro's PlayDoh Plus and DohVinci products and her invention.

VI.    Ms. Pawelko's Motion to Strike and Exclude Tom Dusenberry's Opinions and Testimony Regarding Industry Standards of Confidentiality

The Court struck the testimony and opinions of Ms. Mills-Winkler and Ms. Rosenblum about industry standards of confidentiality, finding that the Non-disclosure Agreement, not generic industry standards, that Hasbro and Ms. Pawelko entered controls the issues here. ECF No. 242. Consistent with this ruling, Ms. Pawelko moves to strike seven paragraphs (¶¶ 23, 93, 102, 108, 109, 156, and 160) from Hasbro expert Tom Dusenberry's report and to exclude any consistent testimony. In response, Hasbro included a chart in its opposition that moves to strike many additional paragraphs from both Ms. Pawelko's and its own experts' reports to be in line with the Court's ruling that the Non-disclosure Agreement controls.

The Court has ruled that opinions about industry standards of confidentiality are irrelevant to this case and no testimony on this subject will be permitted at trial.

The Court GRANTS Ms. Pawelko's motion. ECF No. 257. Without specifically ruling on each paragraph raised, the Court defers to the parties to follow its ruling on this issue and to prepare their witnesses accordingly and present appropriate expert testimony.

VII. **Ms. Pawelko's Motion to Strike and Exclude Evidence Regarding Her Consulting Services Agreement with Adhesive Technologies**

Ms. Pawelko entered into a consulting contract with Adhesive Technologies ("AdTech"), using part of the same Liquid Mosaic Submission presentation that she presented to Hasbro, more than three years after she presented the idea to Hasbro. Hasbro does not contend that her contract with AdTech prohibits her right to bring a misappropriation claim, but argues that the fact that Ms. Pawelko transferred ownership of the Liquid Mosaic Submission to AdTech in April 2014 is relevant because it shows that she can have no damages for misappropriation after that date; the fact that she accepted $2500 from AdTech shows the value she placed on the Liquid Mosaic Submission; AdTech chose to not use Ms. Pawelko's idea; and it is relevant to liability because Ms. Pawelko told AdTech that her invention was inspired by another product on the public market.

The Court finds that Ms. Pawelko's contract with AdTech may be relevant to the jury's determination of the measure and calculation of damages. The Court does not believe that, when presented as part of the timeline of the case, the AdTech contract will confuse or mislead the jury, but the Court will entertain jury instructions at the appropriate time to avoid any confusion. Ms. Pawelko's motion is DENIED. ECF No. 258.

VIII.  Hasbro's Motion in Limine to Exclude Patent-Based Argument

Ms. Pawelko's Liquid Mosaic Submission contained eight elements, each of which are not by themselves protectable trade secrets, but she asserts it is the combination of those elements that was novel.  Hasbro obtained three patents–two for PlayDoh compounds and one for a DohVinci extruder–that Ms. Pawelko argues goes to the use element of her misappropriation claim because Hasbro would not have received these patents without her invention.  There is no dispute that Hasbro did not obtain a patent on the Liquid Mosaic Submission per se and both parties agree that individual elements are not protectable trade secrets.  Hasbro moves to exclude any patent-based arguments, arguing that its patents are not relevant to whether the eight combined elements of the Liquid Mosaic Submission is a trade secret and their admission is prejudicial because the jury will be confused by the import of Hasbro receiving these patents.

Ms. Pawelko argues that she should be permitted to use the patent applications to show that her ideas were novel, and Hasbro used them even if it did not obtain a patent on the entire Liquid Mosaic Submission concept.  Whether an invention is novel is a consideration when the United States Patent Office (USPO) is reviewing a patent application.  The patent applications could show that Hasbro represented to the USPO that its submissions were novel but are not evidence that Hasbro (or the USPO) believed that the combination concept of Liquid Mosaic Submission was novel and protectable as a trade secret.  Testimony from expert and lay witnesses on both sides seem to be a more reliable way to elicit evidence of novelty.

13

The Court GRANTS Hasbro's motion excluding the patent applications as proof that Ms. Pawelko's ideas were novel. ECF No. 259. But the Court leaves open the possibility that the patent applications could be used to prove other elements of her case such as the parameters of Hasbro's alleged use of the Liquid Mosaic Submission so that it will not foreclose the admissibility of the patent applications at this time.

IX. Hasbro's Motion in Limine to Exclude Evidence Relating to Thomas P. Hamilton's Purported Breaches of Hasbro's Own Policies Relating to Confidentiality and Certain Communications

The purported inventor of the accused products, Thomas P. Hamilton forwarded seven emails to his husband. Hasbro moves to exclude them because they imply that he revealed confidential Hasbro information in violation of Hasbro's confidentiality policy. Hasbro also asks that the emails be excluded because Mr. Hamilton referred to his husband using a pet name. Ms. Pawelko objects, arguing that the emails are admissible and go to Mr. Hamilton's credibility because they contradict his deposition testimony, where he testified that he never violated Hasbro's confidentiality policy.

The Court has consistently ruled that because the parties entered into the Non-disclosure Agreement those are the confidentiality terms applicable to this dispute. At this time, it is unclear to the Court how Hasbro's internal confidentiality policy impacted the way it dealt with Ms. Pawelko's submission, if at all. It may become relevant depending on how the evidence develops during trial; or it may not so the Court will reserve judgment on the exclusion of this evidence. Ms. Pawelko may be able to test Mr. Hamilton's credibility with his contradictory deposition testimony

14

whether he has an explanation for his violation of Hasbro policies. The Court thus

DENIES Hasbro's motion without prejudice[4] and will decide this issue after the

interplay of evidence clarifies the matter. ECF No. 260.

X.    Hasbro's Motion in Limine Regarding the Admissibility of Emails Produced
      by Marissa Pawelko (ECF No. 256 (261)) and Hasbro's Motion in Limine to
      Admit Internet Evidence (ECF No. 255 (262)).

Ms. Pawelko does not object to these two motions; they are GRANTED. ECF

Nos. 256 (261) and 255 (262).

SUMMARY OF RULINGS:

1.    Hasbro's Motion to Strike and Exclude Certain Expert Opinions and

Testimony of Suzanne Mills-Winkler (ECF No. 123) is DENIED IN PART and

GRANTED IN PART;

2.    Hasbro's Motion to Strike and Exclude Expert Opinions and Testimony

of Suzanne Mills-Winkler and Pauline Booth on the Issue of Royalty Damages (ECF

No. 124) is DENIED;

3.    Hasbro's Motion to Strike and Exclude Expert Opinions and Testimony

of Pauline Booth on the Issue of Disgorgement of Profits (ECF No. 125) is DENIED;

4.    Hasbro's Motion for a Phased Trial (ECF No. 126) is DENIED;

5.    Hasbro's Motion for an Order that the Remedy of Disgorgement be

Decided by the Court, not the Jury (ECF No. 127) is DENIED;

6.    Ms. Pawelko's Motion in Limine to Confirm Public Trial and Unseal

Judicial Records (ECF No. 245) is DENIED IN PART and GRANTED IN PART;

---

[4] If the Court admits these emails, any prejudicial pet name can be redacted.

7. Hasbro's Motion in Limine to Exclude Diagrams Attached to Ms. Pawelko's Third Amended Complaint (ECF No. 252) is **GRANTED**;

8. Ms. Pawelko's Motion to Strike and Exclude Tom Dusenberry's Opinions and Testimony Regarding Industry Standards of Confidentiality (ECF No. 257) is **GRANTED**;

9. Ms. Pawelko's Motion to Strike and Exclude Evidence Regarding Ms. Pawelko's Consulting Services Agreement with Adhesive Technologies (ECF No. 258) is **DENIED**;

10. Hasbro's Motion in Limine to Exclude Patent-Based Argument (ECF Nos. 249 (259)) is **GRANTED**;

11. Hasbro's Motion in Limine to Exclude Evidence Relating to Thomas P. Hamilton's Purported Breaches of Hasbro's Own Policies Relating to Confidentiality and Certain Communications (ECF Nos. 251 (260)) is provisionally **DENIED**;

12. Hasbro filed two motions that Ms. Pawelko does not object to—they are Hasbro's Motion in Limine Regarding the Admissibility of Email Produced by Ms. Pawelko (ECF Nos. 256 (261)) and Hasbro's Motion in Limine to Admit Internet Evidence (ECF Nos. 255 (262)). Because there is no objection, they are **GRANTED**.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

January 3, 2020